T.C. Summary Opinion 2020-15

UNITED STATES TAX COURT

JOSE A. SERRANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17836-18S.                          Filed May 20, 2020.

Jose A. Serrano, pro se.

<u>Samuel M. Warren</u> and <u>Katherine Holmes Ankeny</u>, for respondent.

SUMMARY OPINION

GERBER, <u>Judge</u>:  This case is subject to the provisions of section 7463 of

the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to

_____

    [1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the relevant times, and all Rule references are to the
                                                          (continued...)

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined the following deficiencies in income tax and penalties with respect to petitioner:

|  | 2015 | 2016 |
|---|---|---|
| Deficiency | $8,213.00 | $11,785 |
| Penalty sec. 6662(a) | 1,642.60 | 2,357 |

Respondent conceded the penalties under section 6662(a) for both taxable years. The issues remaining for our consideration are whether petitioner has shown that he is entitled to deduct certain expenses reported on Schedules F, Profit or Loss From Farming, and certain unreimbursed employee expenses and charitable contributions reported on Schedule A, Itemized Deductions, and whether he failed to report a 2016 income tax refund, in the amount of $4,850, from the State of California.[2]

---

[1](...continued)
Tax Court Rules of Practice and Procedure.

[2]With respect to the $4,850 State tax refund for 2016, petitioner admitted that he received the refund, and the record shows that he did not report it. Respondent's determination is accordingly sustained with respect to that adjustment.

## Background

Petitioner resided in California when his petition was filed. He grew up on his grandfather's farm in Mexico and later moved to the United States. Before and during 2015 and 2016 petitioner worked two eight-hour jobs daily, and his total salary approached $200,000. He saved money to invest in a farming business in Mexico. He worked 16 hours each day as a boiler technician and facility director in two different medical centers. His plan was to earn enough money to purchase a farm in Mexico. He intended to purchase the land one piece at a time until he could aggregate enough for a profitable working operation. Beginning in 2003 and through the years in issue, petitioner purchased land in small parcels averaging around two acres. The land was in the vicinity where his grandfather had owned a farm. Ultimately, it was his goal to retire from his jobs in the United States and have enough acreage to operate a cattle ranch and farm in Mexico.

During 2015 petitioner paid $55,000 for a 55-hectare[3] parcel adjoining the acreage he had accumulated over the years. Of the $55,000 purchase price, $18,682 was transferred to Mexico in 2015 and the remainder was available in Mexico from an accumulation of prior years' transfers. This aggregation of land was in Calera, Zacatecas, in Central Mexico. The climate in that area includes

---

[3]One acre equals .404686 hectares.

four seasons with a three-month rainy period. Up through 2015 petitioner had accumulated 100 hectares so that his 2015 purchase increased his holding to 155 hectares (or approximately 60 acres). As of 2015 the land had a value of approximately $1,000 per acre. Petitioner's understanding was that he could facilitate at least 60 cattle on the accumulated ranch land and it was his goal to have 150 breeding cattle.

As of 2015 petitioner had sufficient contiguous acreage, and in 2016 his employees built a metal and barbed-wire fence around the entire property. The materials to build the fence, which was composed of one inch metal posts and barbed wire, cost petitioner $2,475.92. During 2017 he built a reservoir and a barn and purchased a tractor. As of the time of trial petitioner had 32 cattle and 29 calves on his property. He plans to sell the male cattle for profit and retain about 50 to 60 producing female cattle. At that point he expects that the farm will be profitable.

Throughout 2015 and 2016 petitioner had two full-time employees, one of whom is his brother and the other his brother-in-law. He occasionally hired a third employee when needed. The only source of income for petitioner's two employees was the salaries he paid. Petitioner wired money to his brother weekly to pay salaries and to purchase supplies such as diesel fuel and gasoline. The

weekly wire transfers ranged from $100 to slightly more than $2,000. Petitioner calls his brother each week to discuss the amount of money needed to operate the ranch and then wires the money to his brother.

During 2015 and 2016 petitioner paid each employee 1,500 pesos (or approximately $70) per week. On a daily basis the employees would care for the cattle, grow and harvest corn, and generally maintain the property and make improvements. For 2015 and 2016 petitioner maintained contemporaneous logs detailing the amount and purpose of the money sent to Mexico for the farming operation. Petitioner also maintained records showing the amount of all wire transfers to Mexico during the years in issue. Throughout the years in issue petitioner's employees used fuel to operate vehicles and farm equipment to get to the ranch and to travel the property during the fence construction and other ranch activities. During the years in issue petitioner's employees used a tractor, a ground tiller, and a leveler. The tractor was family owned and had not been purchased by petitioner, but he paid to use it and supplied funds for fuel and maintenance.

For 2015 and 2016, petitioner claimed, as itemized deductions, charitable contributions of $5,320 and $5,420, respectively. The amount claimed for 2015 represented money he had sent to a sister who was ill, and petitioner did not recall

the details of the 2016 reported charitable contribution. For 2015 and 2016 petitioner reported unreimbursed employee expenses of $5,748 and $6,183, respectively. The employee expenses were for paying his cell phone bills, purchasing tools and work clothing, and cleaning the work clothing.

Petitioner went through his bank statements and checks to determine the amounts paid to Verizon Wireless and to clean his work clothes. Petitioner worked 16 hours each day, and he primarily used the phone for work. For 2015 $2,032 of the $5,748 claimed was for his cell phone bills and the remainder was for cleaning work clothing and purchasing safety equipment, small tools, and supplies. For 2016 the total the $6,183 claimed was without any breakdown of the categories. Petitioner's cell phone bills for 2015 and 2016 totaled $3,367.76 and $3,882.88, respectively. The cell phone bills included a four-phone plan, only one of which was petitioner's. Petitioner turned his records and information over to a tax return preparer who prepared his returns.

On his 2015 Schedule F petitioner reported $27,024 for farming expenses as follows: cost of livestock--$4,250; depreciation--$12,109; labor--$6,000; supplies--$2,824; legal and professional--$500; and travel expenses--$1,341. Respondent allowed $7,074, including the cost of livestock and supplies and disallowed the remaining items. On his 2016 Schedule F petitioner reported

$29,097 for farming expenses as follows: depreciation--$18,015; labor--$6,000; supplies--$3,106; legal and professional--$500; and travel expenses--$1,476. Respondent allowed $3,106 for the supplies and disallowed the remaining items.

From 2008 through 2010 petitioner built a warehouse on the farm. The warehouse is a 25- by 45-foot rectangular building with an 18-foot-high roof. It was built out of adobe bricks and mortar that petitioner purchased. The building was erected by two men who were not petitioner's employees. He claimed depreciation deductions for this building and another asset on his 2015 and 2016 tax returns.

Petitioner made it a practice to visit the ranch at least once each year. On those visits he would conduct his ranch business while taking a vacation from his two jobs in the United States. His cost for two trips to the ranch during 2015 was $368.45. There was no evidence of the cost of a trip during 2016. A home that had belonged to his grandfather was situated on the property and used by petitioner and his family when they visited. During the rest of the year the house remained vacant. Petitioner's wife and daughter would fly with and accompany him on those trips. The normal duration of the trips was one to two weeks. On each trip petitioner would inspect the ranch property to make sure that the work was being done in accord with instructions. He would reside on the farm property

and check the cattle and other aspects of the ranch operation. He would also discuss ranch issues with the employees and consider things that needed to be accomplished.

Discussion

This case concerns substantiation of deductions claimed for 2015 and 2016. Generally, the Commissioner's determinations are presumed correct and the taxpayer has the burden of showing entitlement to any deduction claimed. See Rule 142; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933). A taxpayer must show that his work-related expenses were paid or incurred in a trade or business and/or for the production of income. See secs. 162(a), 212(1). In instances where a taxpayer has incurred expenses but cannot fully substantiate them, the Court may estimate the amount of the expense. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Court to estimate the expense, there must be some basis upon which to make the estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Schedule F. With respect to petitioner's Schedules F on which he reported farming business expenses, respondent does not question whether petitioner had a farm and/or whether it was operated as a business. Respondent allowed the

deduction for the cost of cattle for 2015 and the supplies deductions for 2015 and 2016. All other claimed deductions on the Schedules F were disallowed.

Petitioner reported labor expenses of $6,000 for operating the farm in each of 2015 and 2016. He offered evidence showing the transfer of money for that purpose that approximated the amounts claimed. Petitioner had two full-time employees on his farm. He would call one of them weekly to find out the amount of expenses being incurred in the operation of the farm. He would also wire money to Mexico weekly to purchase supplies and pay the salaries of the two employees. Petitioner's testimony and evidence was credible, and accordingly, he is entitled to deduct $6,000 for labor for each of 2015 and 2016.

For each of 2015 and 2016 petitioner reported $500 for legal fees. Petitioner purchased additional land for $55,000 in 2015 and testified that he incurred the legal fees in connection with the acquisition of the additional land. For 2016 there is no evidence in the record that would show the nature and purpose of the legal fees. Accordingly, petitioner is entitled to a $500 legal fee deduction for 2015, and respondent correctly determined that the $500 was not allowable for 2016.

Petitioner claimed depreciation deductions of $12,109 and $18,015 for 2015 and 2016, respectively. Although petitioner was able to convince the Court that he

had built a warehouse and a metal and wire fence on the property, there was no evidence of the cost for the warehouse or the useful life of any asset that could have been depreciated. When questioned about the cost of the warehouse, petitioner had no specific recollection of the amount. Accordingly, respondent's determination disallowing the depreciation for 2015 and 2016 is sustained.

Petitioner reported travel expenses of $1,341 and $1,476 for 2015 and 2016, respectively. Petitioner's documentation and testimony show that he spent $368.45 for airline trips to the ranch on two occasions during 2015. There is no evidence to support petitioner's reported travel expenses for 2016. Travel expenses are subject to the strict substantiation requirement of section 274(d). In this instance we find that petitioner's information and documentation are adequate for 2015, and he is entitled to deduct $368.45 in travel expenses. With respect to the remaining $972.55 of the $1,341 reported for 2015 and the $1,476 reported for 2016, respondent's determination is sustained.

Schedule A Itemized Deductions. For 2015 and 2016 petitioner claimed charitable contribution deductions and unreimbursed employee expenses all of which respondent disallowed. The charitable contribution deductions were of $5,320 and $5,420 for 2015 and 2016, respectively. With respect to the $5,320 for 2015, it represented, in part, money petitioner sent to his sick sister in Mexico.

With respect to the $5,420 for 2016, petitioner did not have any explanation or receipts showing the recipient or a payment. The payments to his sister do not qualify as a charitable contribution. See sec. 170(a)(1). Accordingly, respondent's determination with respect to both amounts is sustained.

For 2015 and 2016 petitioner reported on Schedule A unreimbursed employee expenses of $5,748 and $6,183, respectively. The expenses comprised cell phone costs, the purchase of safety equipment, tools, and work clothing, and cleaning the work clothing. Petitioner worked two eight-hour jobs each day, leaving him less than eight hours to be involved in personal activities. Respondent contends that no amount should be allowed for cell phone costs because it was for personal use and not a business expense. Petitioner's extensive work schedule and his need to coordinate both jobs daily belie respondent's contention. We also note that petitioner called Mexico weekly in connection with his farm activity, which respondent agrees was a business.

Petitioner provided evidence showing that his cell phone bills totaled $3,367.76 and $3,882.88 for 2015 and 2016, respectively. The cell phone plan used by petitioner and his family included four cell phones. We accordingly hold that petitioner is entitled to deduct one-fourth of the cell phone bills ($841.94 for 2015 and $970.72 for 2016).

The remainder of the unreimbursed employee expenses reported were for purchasing tools and safety equipment and purchasing and cleaning work clothing. In order for these expenses to be deductible petitioner must show that the tools, equipment, and work clothing were necessary business expenses in his employment and not personal expenses. See, e.g., Yeomans v. Commissioner, 30 T.C. 757, 767 (1958). Petitioner has not shown that the reported expenses are necessary employee business expenses, and accordingly, to the extent not allowed above, the remaining reported employee business expenses for 2015 and 2016 are not allowable, and respondent's determination is sustained.

In view of the foregoing and because of concessions of the parties,

Decision will be entered under

Rule 155.